**K–W CONSTRUCTION, INC., Petitioner,**

v.

**The UNITED STATES, Respondent.**

**Appeal No. 15–81.**

United States Court of Claims.

Feb. 10, 1982.

Lawrence R. Greenberg, Los Angeles, Cal., attorney of record, for petitioner.

Adrian C. Hunte, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for respondent.

Before FRIEDMAN, Chief Judge, KUNZIG and BENNETT, Judges.

## ON APPEAL FROM THE ARMED SERVICES BOARD OF CONTRACT APPEALS

KUNZIG, Judge.

This contracts case comes before the court on petitioner's timely appeal from a final decision of the Armed Services Board of Contract Appeals (ASBCA).[1] In this action, petitioner seeks review of an ASBCA decision which denied petitioner damages in the amount of $18,298 allegedly incurred because of the Government's delay in awarding petitioner a contract for the construction of a building at Mather Air Force Base, California. The delay resulted from the government's initial rejection of petitioner's bid as unresponsive due to a discrepancy between the name which appeared on the bid ("K. W. Western Constructors") and that which appeared on the bid bond ("K–W Construction, Inc."). We affirm the decision of the ASBCA.

The facts can be restated briefly. In February of 1979 the Army Corps of Engineers issued an Invitation for Bids for the Mather Air Force Base construction project. Petitioner submitted the low bid of $406,257 under the name of "K. W. Western Constructors." However, the bid bond accompanying the bid was submitted in the name

---

1. Appeal of *K–W Construction, Inc.*, ASBCA No.25075 (Nov. 17, 1980).

of "K–W Construction, Inc." [2] Despite petitioner's explanation that "K. W. Western Constructors" and "K–W Construction, Inc." were one and the same entity, on March 19, 1979 the Contracting Officer sent petitioner a letter rejecting the bid as non-responsive. In rejecting the bid, the Contracting Officer relied upon the terms of the Invitations for Bids (No. DACA05–79–B–0060), Defense Acquisition Regulation (DAR) 10–102.5,[3] and prior decisions of the Comptroller General requiring strict compliance with bid procedures.

On March 28, 1979, petitioner appealed the rejection of its bid to the Comptroller General of the United States, who subsequently sustained the appeal [4] on the ground that publicly available documents could have been used to establish that the bidder and the principal on the bond were the same legal entity. As a result of the Comptroller General's decision that rejection of petitioner's bid was improper, K–W was awarded the contract on July 17, 1979.[5]

After completing the work in February of 1980, petitioner notified the Contracting Officer that due to the delay in awarding the contract, petitioner was claiming an additional $18,298 to cover increased costs. The Contracting Officer denied this claim, and the subsequent appeal to the ASBCA was similarly denied. This suit was then timely filed to review the final adverse decision of the ASBCA.

█ We note at the outset of our analysis that the scope of review of ASBCA decisions is governed by statute. Section 10(b) of the Contract Disputes Act of 1978, 41 U.S.C. § 609(b) provides:

In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 607 of this title, notwithstanding any contract provision, regulation, or rules of law to

the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

The Government also enjoys a presumption that its officials make their decisions in good faith. *See, e.g., Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786 (1978).

To overcome this substantial legal burden, petitioner in effect urges the court to adopt a new rule of law which would allow it to recover its alleged increased costs. Petitioner first cites the well-established rule that when the Government unreasonably delays a contractor's performance it is liable for damages incurred by the contractor due to the delay. *L. L. Hall Construction Co. v. United States,* 177 Ct.Cl. 870, 878, 379 F.2d 559, 563 (1966). However, the *Hall* rule, standing alone, provides an insufficient basis for petitioner's recovery of delay damages because the rule has generally been limited to delays caused by the Government *during the course of the contractor's performance.* By contrast, in the case at bar petitioner seeks to recover damages for a delay which occurred *prior to* the time it commenced performance, and, indeed, prior to the time the contract was executed. Petitioner attempts to expand the *Hall* rule beyond the course of performance limitation by reference to another well-established rule regarding the proper standard for the Government's treatment of bids. This second rule dictates that when the Government circulates an advertisement for bids it creates an implied promise to give fair and honest consideration to the bids submitted in response. *Heyer Prod-*

---

**2.** Both the bid and bid bond were signed by Company President Keith Williams.

**3.** DAR 10–102.5 states in part, "When a solicitation requires that bids be supported by a bid guarantee, noncompliance with such requirement will require rejection of the bid. . . ."

**4.** *K–W Construction, Inc.,* B–194480 (June 29, 1979).

**5.** The contract was awarded 119 days after the bid opening date and 59 days after the bid closing date.

*ucts Co. v. United States*, 135 Ct.Cl. 63, 69, 140 F.Supp. 409, 412–13 (1956). *See also Morgan Business Associates, Inc. v. United States*, 223 Ct.Cl. 317, 322, 619 F.2d 892, 895 (1980). Petitioner asserts that the combined effect of the *Hall* rule regarding governmental liability for contractual delay and the *Heyer Products* rule regarding proper consideration of bids provides ample legal basis for its recovery in this case.

We reject petitioner's creative approach to this case. Petitioner entered into a contract with the Government and now asserts a claim related to the performance of that contract. The suspension of work clause in the contract therefore governs petitioner's suit for damages resulting from Government-caused delay. This clause provides that in order for a delay to be compensable it must have been "for an unreasonable period of time" and caused "by an act of the Contracting Officer in the administration of this contract. . . ." Because the delay in this case occurred *prior to* the administration of the contract, petitioner's claim for delay damages is not cognizable under the suspension of work clause, as ASBCA so found in its decision denying petitioner's claim.[6]

Even assuming *arguendo* that the delay occurred during the administration of the contract, the record fails to establish that the delay was "for an unreasonable period of time." The Contracting Officer, in rejecting petitioner's bid as unresponsive, apparently relied in good faith upon a decision of the Comptroller General in *A. D. Roe Company, Inc.*, 54 Comp.Gen. 271 (1974), in which a bid protest was denied involving a similar discrepancy in names which appeared on a bid and bid bond. In *Roe*, the Comptroller General stated, "We have consistently held that a bid bond which names a principal different from the nominal bidder is deficient and the defect may not be waived as a minor informality." In view of the Contracting Officer's good

faith reliance upon the *Roe* decision, we cannot accept petitioner's contention that the delay in this case due to the resolution of the bid protest was unreasonable.[7] In considering the issue of reasonableness we further note that it was petitioner who initiated the delay by not examining the documents carefully to insure that the name on the bond was identical to that which appeared on the bid. All other arguments raised by petitioner, although not directly addressed in this opinion, have been considered and found to be without merit.

In summary, we hold that the ASBCA decision is neither arbitrary, capricious, nor unsupported by substantial evidence. Accordingly, after consideration of the submissions of the parties, with oral argument of counsel, the decision of the ASBCA is

AFFIRMED.

---

6. We note that petitioner has failed to cite any case in which a successful bidder has recovered delay damages arising from the Government's initial improper bid rejection.

7. *See also DeMatteo Construction Co. v. United States*, 220 Ct.Cl. 579, 592, 600 F.2d 1384, 1391 (1979) (31-day delay due to resolution of bid protest not unreasonable).